UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREA G.,

                                Plaintiff,

v.                                                              5:20-CV-01253 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON<br>Counsel for Plaintiff<br>126 North Salina Street, Suite 3B<br>Syracuse, NY 13202 | STEVEN R. DOLSON, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF THE GENERAL COUNSEL<br>Counsel for Defendant<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, MA 02203 | CANDACE LAWRENCE, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

       Andrea G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her requests for disability and supplemental security benefits. (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court. Pursuant to 28 U.S.C. § 636(c), the parties consented to the disposition of this case by a Magistrate Judge. (Dkt. No. 5.) The matter is presently before the Court on the parties' cross-motions for judgment

on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 13, 17.) For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed and Plaintiff's complaint is dismissed.

## I.      BACKGROUND

Plaintiff was born on November 9, 1972, has a high school education, and completed one year of college. (Administrative Transcript at 43, 69, 75, 204.[1]) Her previous employment included positions as a customer service order clerk, customer service representative, and legal assistant/paralegal. (T. at 69.)

Plaintiff filed for disability insurance and supplemental security income in July and October 2018, alleging an onset date of June 1, 2018, due to autoimmune deficiency, inflammation within the body, possible early onset rheumatoid arthritis, chronic fatigue, migraine headaches, dizziness, double vision, tingling in the fingers and toes, and a lack of concentration. (T. at 203.) The Commissioner denied Plaintiff's initial applications, and she requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 103-10.) ALJ Gretchen Greisler held a hearing on November 14, 2019, and Plaintiff testified along with a vocational expert. (T. at 35-74.) The ALJ denied Plaintiff's claims for benefits on December 5, 2019, and the Appeals Council denied Plaintiff's request for review on August 21, 2021. (T. at 1-3.) Plaintiff now seeks this Court's review. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 12. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.

**II.     RELEVANT LEGAL STANDARDS**[2]

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).[3] The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the plaintiff-claimant meets his or her burden of

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983). Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Rather than cite to relevant regulations under both 20 C.F.R. § 404.1501 *et seq.* (governing disability insurance) and 20 C.F.R. § 416.901 *et. seq.* (governing supplemental security income), the Court will cite to the disability insurance regulations. *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000).

[3] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id*.

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

**III.   THE ALJ'S DECISION**

The ALJ found Plaintiff met the insured status requirements through September 30, 2021. (T. at 18.)  The ALJ then applied the five-step analysis to find that: (1) Plaintiff had not engaged in substantial gainful activity since June 1, 2018, the alleged onset date; (2) Plaintiff's chronic sinusitis, obesity, rheumatoid arthritis without rheumatoid factor, and depression were severe impairments; and that (3) these severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  (T. at 18-19.)  Before proceeding to step four, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> she can occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps, but she cannot climb ladders, ropes or scaffolds, work at unprotected heights or in close proximity to dangerous machinery, and she cannot tolerate concentrated exposure to extreme heat.  She can frequently reach in all directions and can handle, finger and feel.  She can perform simple, routine and repetitive tasks, at a consistent pace, but not at a fast production rate pace, such as would be experienced in assembly line type of work.  She can make simple work related decisions and tolerate occasional changes.

(T. at 20-21.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (T. at 25.)  At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of inspector, hand packager, final assembler, and off piece checker. (T. at 26.)  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (T. at 26-27.)

## IV.   DISCUSSION

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in assessing the opinion of treating physician, Matthew Procopio, M.D. (Dkt. No. 13.)  Defendant contends the ALJ applied the correct legal standards and substantial evidence supports the Commissioner's decision.  (Dkt. No. 17.)

### A.   RFC and Medical Opinion Evidence

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009); *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013).  "In making a [RFC] determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019); *see* 20 C.F.R. § 404.1545; *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*.  "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192-93 (N.D.N.Y. 2019).

For disability claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 404.1520c.  Under this regulation, applicable here, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see also Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).[4]  Rather, the ALJ considers factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such

---

[4] "Previously, the SSA followed the treating physician rule, which required the agency to give controlling weight to a treating source's opinion, so long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." *James B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01075 EAW, 2021 WL 5988411, at *4 (W.D.N.Y. Dec. 16, 2021).

as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. § 404.1520c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. The ALJ is specifically required to "explain how she considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Howard*, 2021 WL 1152834, at *12 (observing, "courts have remanded where an ALJ did not adhere to the regulations") (collecting cases).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be. 20 C.F.R. § 404.1520c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations."). Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *Galo G. v Comm'r of the Soc. Sec. Admin*, No. 3:20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations

provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion." *Howard D.*, 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 1520c(a), (b)(2). However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors. 20 C.F.R. § 404.1520c(b)(3).

### B. The ALJ's Evaluation of the Medical Opinion Evidence

In reaching her RFC determination, the ALJ considered a number of medical opinions related to Plaintiff's physical and mental limitations. (T. at 20-25.)

With regard to Plaintiff's physical abilities, Dr. Kalyani Ganesh performed a consultative examination of Plaintiff on September 4, 2018. (T. at 325-27.) During the examination, Plaintiff demonstrated a normal gait, and was able to change for the examination, get on and off the examination table, and rise from a chair without difficulty. (T. at 326.) She declined to walk on her heels and stated she could not squat. (T. at 326.) Dr. Ganesh observed full range of motion in her cervical spine, shoulders, elbows, forearm, wrists, hips, knees, and ankles. (T. at 327.) In her lumbar spine, Plaintiff had 60° flexion, 50° extension, and 10° of lateral flexion rotation. (T. at 327.) Plaintiff's straight leg raise test was negative bilaterally. (T. at 327.) Plaintiff's joints were stable and nontender, and there was no redness, heat, swelling, or effusion. (T. at 327.) She exhibited full strength in both upper and lower extremities, with no sensory deficits. (T. at 327.) Plaintiff had intact dexterity and full grip strength. (T. at 327.)

Based on that examination, Dr. Ganesh opined Plaintiff had no limitations in her ability to sit, stand, or walk, and mild limitations with lifting, pushing, and pulling. (T. at 327.) The ALJ found Dr. Ganesh's opinion persuasive because it was supported by her physical examination of Plaintiff, expertise, and program knowledge, and was consistent with the totality of the record. (T. at 24.)

The ALJ also considered the opinion of non-examining state agency consultant H. Miller, M.D., dated November 20, 2018, who reviewed Plaintiff's then-current medical records. (T. at 24, 85, 338.) Dr. Miller opined Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally. (T. at 85.) The state agency consultant further opined Plaintiff could stand and/or walk for a total of six hours during an eight-hour workday and could sit for a total of six hours in an eight-hour workday. (T. at 85.) In Dr. Miller's opinion, Plaintiff could frequently climb ramps, stairs, ladders, ropes or scaffolds, and could frequently balance, stoop, kneel, crouch or crawl. (T. at 85-86.) The ALJ found Dr. Miller's opinion to be persuasive as it was consistent with the then-available record, but noted that subsequent evidence, developed after the Plaintiff's motor vehicle accident in May 2019,[5] supported slightly greater postural limitations. (T. at 24.)

With regard to Plaintiff's mental abilities, Jeanne A. Shapiro, Ph.D., performed a consultative psychiatric examination of Plaintiff on August 23, 2018. (T. at 317-21.) During the examination, Plaintiff was cooperative with coherent and goal-directed thought processes, adequate speech, a somewhat constricted affect, and a tense and apprehensive mood. (T. at 319.) Plaintiff's attention and concentration were intact—she was able to perform counting and simple calculations (*e.g.*, 8×4) but "struggled a bit" with serial sevens from 100. (T. at 319.) Her

---

[5] Plaintiff hit a cement pole while turning out of a parking lot causing the airbag to deploy. (T. at 433.)

memory was also intact and her intellectual functioning was estimated to be in the low average range with a fund of knowledge that was appropriate to her experience. (T. at 319.) Plaintiff's insight and judgment were fair. (T. at 320.)

Based on that examination, Dr. Shapiro opined Plaintiff had no limitations in the ability to understand, remember, or apply simple directions, and mild limitations with understanding, remembering, or applying complex directions due to memory deficits. (T. at 320.) Dr. Shapiro assessed no limitations in Plaintiff's ability to use reasoning and judgment to make work-related decisions, and mild limitations interacting adequately with supervisors, coworkers, and the public. (T. at 320.) Dr. Shapiro assessed moderate limitations in the areas of sustaining concentration, maintaining pace, regulating emotions, and maintaining well-being. (T. at 320.) As for maintaining regular attendance, Dr. Shapiro assessed mild limitations. (T. at 320.)

The ALJ found Dr. Shapiro's opinion persuasive as it was "supported by an examination with a full explanation of the clinical findings forming the basis of the opinion." (T. at 24-25.) The ALJ also found the opinion consistent with Plaintiff's complaints, as well as the examination findings. (T. at 25.)

H. Ferrin, Ph.D., a State agency consultant, opined Plaintiff's mental impairments were non-severe. (T. at 83.) The ALJ found Dr. Ferrin's opinion not persuasive, because "there is sufficient evidence to support a severe mental impairment." (T. at 25.)

The ALJ also reviewed evidence from Plaintiff's primary care physician, Dr. Procopio, including an opinion questionnaire dated November 7, 2019. (T. at 24, 535-37.) In the checkbox form, Dr. Procopio assessed functional limitations based on Plaintiff's "auto inflammatory syndrome, unspecified/seronegative arthropathy/chronic pain." (T. at 535-37.) He opined Plaintiff could sit for no more than 30 minutes at one time, stand for no more than 10

11

minutes before needing to change positions, and was able to sit, stand, or walk for less than two hours in an eight-hour workday.  (T. at 536.)  Dr. Procopio indicated Plaintiff would need an unscheduled break every 30 minutes in order to lie down for 30 minutes.  (T. at 536.)  He also opined she could never lift more than 10 pounds and could rarely lift less than 10 pounds.  (T. at 536.)  Dr. Procopio indicated Plaintiff can rarely look up, look down, turn her head right or left, or hold her head in a static position.  (T. at 537.)  He opined Plaintiff's pain or other symptoms would interfere with her attention and concentration while performing simple tasks over 30% of the time.  (T. at 535.)  Dr. Procopio indicated Plaintiff would miss more than four days of work per month.  (T. at 537.)

      The ALJ found Dr. Procopio's opinion not persuasive, explaining:

> Nothing in Dr. Procopio's records support these extremely restrictive limitations; in particular, the limitations regarding absences and time off task are unsupported.  Further, his records show that the claimant's mental symptoms improved, without any treatment.  Dr. Procopio provides no explanation, no reference to clinical findings, and no basis for this opinion, which is not consistent with the medical evidence of record.  Accordingly, given the lack of clinical support, this opinion is not persuasive.

(T. at 24) (internal citations omitted).

    **C.**    **Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC**

      As noted, Plaintiff contends the ALJ committed reversible error by improperly evaluating Dr. Procopio's opinion.  (Dkt. No. 13 at 5-8.)  The Court disagrees.

      Contrary to Plaintiff's assertion, the ALJ found that Dr. Procopio's opinion was not persuasive for reasons that are both consistent with the revised rules and supported by substantial evidence.  As to the supportability factor, the ALJ explained that Dr. Procopio "provide[d] no explanation, no reference to clinical findings, and no basis for [his] opinion."  (T. at 24, 535-37.)

She also found that "[n]othing in Dr. Procopio's records supports [his] extremely restrictive limitations." (T. at 24.) Apart from Plaintiff's reports of neck and back tenderness and reduced neck range of motion in 2019 (T. at 469, 477), Dr. Procopio's notes routinely observed normal, objective findings, including that she appeared "healthy," walked with a normal gait, and had full motor strength, intact sensation, normal reflexes, and a normal mood and affect. (T. 441-42, 456–57, 469, 477.) *See, e.g.*, *LaFave v. Comm'r of Soc. Sec.*, No. 16-0621, 2017 WL 4011264, at *5 (N.D.N.Y. Sept. 11, 2017) (substantial evidence supported ALJ's rejection of treating physician's opinion of disabling limitations where his own treatment notes showed intact sensation and strength, normal gait, and no apparent distress, despite reports of muscle pain and reduced lumbar range of motion).

Turning to the consistency factor, the ALJ found Dr. Procopio's opinion was "not consistent with the medical evidence of record." (T. at 24.) Although the ALJ did not cite specific inconsistencies in her analysis of Dr. Procopio's statement, the ALJ's decision outlines the medical evidence in the record she relied on in making her conclusion, including the following:

> • a positive ANA test in June 2018, but no clear-cut evidence for inflammatory synovitis (potentially "the early beginning of an inflammatory arthritis") (*see* T. at 21, 297);
>
> • in August 2018, Plaintiff reported low back and hip pain, but her rheumatological exam revealed no synovitis, a good range of motion of the lumbar spine and hips, and a negative straight leg raise bilaterally (*see* T. at 22, 287);
>
> • unremarkable x-rays of Plaintiff's hips, lumbar spine, and sacroiliac joints from August 2018 (*see* T. at 22, 299-301);
>
> • Plaintiff complained of back tenderness and facial tenderness ("with the slightest touch humanly possible") following a minor automobile accident in May 2019, but a normal range of motion on

13

> exam, with no edema, normal reflexes, normal muscle tone, and normal coordination (*see* T. at 22, 435-36);
>
> • the following week Plaintiff had limited range of motion of the neck and reported tenderness, but her gait was normal and she had normal motor strength, reflexes, and sensation (*see* T. at 22, 469);
>
> • Dr. Ganesh's clinical exam findings, which showed normal gait, full range of motion of neck, shoulders, elbows, wrists, hips, knees, and ankles (but some limitations in lumbar range of motion) no sensory deficits, full strength, and normal dexterity (*see* T. at 22-23, 326-27); and
>
> • Dr. Shapiro's psychiatric exam findings, including coherent and goal-directed thought processes; intact attention, concentration, and memory; and fair insight and judgment (*see* T. at 23, 319-20).

(*See also* Dkt. No. 17 at 18.)

After reviewing the record, this Court finds the ALJ's conclusion – that Dr. Procopio's opinion was not consistent with or supported by medical evidence – applied the correct legal standards and is supported by substantial evidence. Notably, the opinions of Dr. Ganesh, Dr. Shapiro, and Dr. Miller – all of which the ALJ found persuasive – provide support for the ALJ's finding that Dr. Procopio's opinion was not consistent with the medical evidence of record. Plaintiff's "disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016). Because the ALJ considered whether Dr. Procopio's opinion was consistent with and supported by the record as required by the regulations, the Court rejects Plaintiff's argument. *See Jeanette J. v. Saul*, No. 6:19-cv-0795 (ML), 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) (holding ALJ decision must be read as a whole to avoid "needless formality" of repetitive analyses).

Plaintiff's argument that the consultative opinions were rendered stale by Plaintiff's car accident on May 3, 2019, is likewise unpersuasive. (Dkt. No. 13 at 8; Dkt. No. 17 at 23-24.[6]) The ALJ expressly considered Plaintiff's post-car accident records and found the opinions of Dr. Ganesh, Dr. Miller, and Dr. Shapiro to be consistent with the overall medical record. (T. at 18.) Plaintiff has not identified any new significant diagnosis or significant deterioration in her condition that would render the opinions "stale." *Maxwell H. v. Comm'r of Soc. Sec.*, 19-CV-0148 (LEK), 2020 WL 1187610, at *5 (N.D.N.Y. March 12, 2020) (A consultative opinion may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision."). Moreover, the ALJ accounted for and assessed "slightly greater postural limitations" than those assessed by Drs. Ganesh and Miller, based on evidence "developed after [Plaintiff's] motor vehicle accident in May 2019." (T. at 24.) Plaintiff has not shown that greater limitations were warranted.

Plaintiff additionally argues that the ALJ improperly treated Dr. Procopio's opinion regarding off-task behavior and absenteeism. (Dkt. No. 13 at 7.) Although Plaintiff claims that Dr. Procopio's medical opinion is the *only* opinion of record to address the off-task rate and absenteeism, as detailed above, Dr. Shapiro opined that Plaintiff's mental impairments would cause only "mild limitations sustaining an ordinary routine and regular attendance at work" and "moderate limitations . . . performing a task at a consistent pace." (T. at 25.) Further, Drs. Ganesh and Miller opined Plaintiff was capable of performing light work with no added restrictions related to off-task behavior absences. (T. at 85-86, 327.) As previously established, the ALJ found the opinions of Drs. Shapiro, Ganesh, and Miller to be persuasive because they

---

[6] Plaintiff hit a cement pole while turning out of a parking lot causing the airbag to deploy. (T. 433.)

15

were supported by their own clinical examination findings and consistent with the other evidence. (T. at 24-25, 317-22, 325-29.)  Remand is not warranted on this ground.  *See, e.g., Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (finding physician's opinion that the plaintiff would be off-task and significantly absent was contradicted by an opinion from a consultative examiner that the individual had only "mild limitations for sitting, standing, walking, pushing, and pulling") (summary order); *see also Smith*, 740 F. App'x at 725 (rejecting assertion that the ALJ was required to identify evidence that explicitly rebutted the opinions of treating physicians as to his ability to stay on-task and maintain regular attendance before discounting or rejecting those opinions).

Next, Plaintiff contends the ALJ "relie[d] upon factually inaccurate assertions to discount [Dr. Procopio's] opinion," citing the ALJ's statement that Plaintiff's mental symptoms improved without treatment, and Plaintiff's use of the medication Venlafaxine HCL (Effexor).  (Dkt. No. 13 at 6-7.)  Plaintiff's argument is unpersuasive.  The ALJ acknowledged Plaintiff's use of the medication, explaining "she has not sought any treatment for her mental condition, other than medication prescribed by her gynecologist."  (T. at 24.)  This observation is consistent with medical records which reveal the medication was first prescribed for "menopausal and female characteristic states" on June 13, 2018, after Plaintiff reported fatigue, sweating, and a family history of menopause.  (T. at 23, 269.)  In fact, Plaintiff told her gynecologist she was not experiencing any psychiatric symptoms and the doctor observed that her mood and affect were both normal. (T. at 268-69.)  The ALJ's statement that "[Plaintiff] has not sought any treatment for her mental condition, other than medication prescribed by her gynecologist" is supported by the fact that Plaintiff has never been hospitalized for psychiatric treatment, has no history of outpatient treatment, and, as Plaintiff does not dispute, no history of medication treatment other

than Effexor.  (T. at 23-24, 457-83.)  Moreover, as pointed out by the Commissioner, Plaintiff routinely told Dr. Procopio that she was not experiencing any depressive symptoms.  (T. at 23, 443 (July 2018), 468 (May 2019), 473 (May 2019), 476 (June 2019).)  The ALJ also noted that other providers also observed a normal mood and affect.  (T. at 23, citing T. at 269 (June 2018), 436 (May 2019), 499 (Feb. 2019)); *see also* T. at 296, 305, 392 (no depression in June and July 2018 or April 2019), 434 (negative for dysphoric mood in May 2019), 498 (denied psychiatric symptoms in Feb. 2019).)  Thus, there was no misstatement.

Plaintiff's own testimony about her daily routine and activities is also inconsistent with the extremely limited opinion prescribed by Dr. Procopio.  (T. at 24, 69, 325.)  Plaintiff testified and reported that on a daily basis she was able to prepare meals, engage in social activities such as weekly shopping trips, visit and entertain neighbors, attend outdoor activities, attend church, dress, clean, care for her young son, watch TV, listen to the radio, and read.  (T. at 24, 69, 325.)  In sum, the Court finds the ALJ properly considered Dr. Procopio's opinion.

Plaintiff has failed to identify a legal error in the ALJ's analysis and "[t]he substantial evidence standard means that once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).

In other words, the claimant must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec.*, 6:16-CV-1397 (WBC), 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018).  However, as explained *supra* and in the Commissioner's brief, the ALJ's narrative discussion establishes that she reached a series of reasonable, supportable conclusions about Plaintiff's limitations based on substantial evidence in the record.

Based on the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports the Commissioner's decision.  Remand is therefore not warranted.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.


Dated:  January 24, 2022
        Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge